**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Larissa Tessier and Zach Tessier, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Plaintiffs, ) | **ORDER RE PLAINTIFFS' MOTIONS** |
| ) | **IN LIMINE (1-5)** |
| vs. ) | |
| ) | |
| American Family Mutual Insurance ) | |
| Company, ) | |
| ) | Case No. 1:12-cv-027 |
| Defendant. ) | |

Before the court are plaintiffs' Motions in Limine (1-5) filed on March 7, 2013, at Doc. No. 18.  The court's rulings on the motions are set forth below.

**I.      BACKGROUND**

At approximately 8:00 p.m. on the evening of November 24, 2009, a car being driven in a northerly direction by Amy Svihovec on Highway 85 near Grassy Butte, North Dakota, went out of control, slid across the centerline, and was hit by an SUV being driven by Linda Tvedt. Tvedt and her daughter, plaintiff Larissa Tessier, were injured in the accident.  Extensive damage was done to both vehicles.  Svihovec perished in the accident.

Svihovec's vehicle was insured by defendant with policy limits of $100,000 per person/$300,000 per accident.  The SUV driven by Tvedt was owned by plaintiffs and was insured by defendant with underinsured motorist policy limits of $250,000 per person/$500,000 per accident.

Larissa Tessier made a claim against Svihovec's liability policy with defendant and recovered the $100,000 policy limits.  Plaintiffs are now proceeding with this lawsuit to recover underinsured motorist benefits under their own policy with defendant.  Defendant, for the purposes

1

of this lawsuit only, has admitted liability and has stipulated that the only issues to be decided at the trial will be the damages sustained by plaintiffs and their entitlement to no-fault benefits.

Larissa Tessier does not remember the details of the accident. Her mother advised the investigating authorities after the accident that Tessier momentarily unbuckled her seatbelt to tend to her child in the back seat and was in the process of putting her seatbelt on when the accident occurred. There is evidence to suggest that Tessier's head made impact with the windshield of the SUV as a result of the collision. As a part of this litigation, Tessier is claiming damages related to several fractures and related injuries, post-traumatic stress disorder, and a traumatic brain injury.

## II.  COURT'S RULINGS

**1.  Motion to exclude "[a]ny reference to or evidence (including photographs and medical records) concerning Larissa Tessier not wearing her seatbelt at the time of the accident."**

Plaintiffs' argument is that the seatbelt evidence is irrelevant for the following reasons:

1. Failure to use a seatbelt in violation of N.D.C.C. § 39-21-41.4 is not itself evidence of negligence and a violation of this section cannot be used in any proceeding other than one charging the violation.

2. The failure to wear a seatbelt under present North Dakota law is an item of comparative fault, and defendant has waived its right to consideration of this defense in the stipulation it executed admitting liability and agreeing the trial would only be as to damages.

3. The defendant will be unable to prove a "causal connection" between any injury or enhanced injury suffered by plaintiff as the result of the failure to wear a seatbelt

without the assistance of expert testimony and defendant has not designated an expert.

In response, defendant argues that N.D.C.C. § 39-21-41.4 does not prohibit a jury from considering the failure to wear a seatbelt in the context of a personal injury action. Defendant further argues it is entitled to have Larissa Tessier's failure to wear a seatbelt considered by the jury in reduction of damages and that the special verdict form should include a question asking the jury to determine what percentage of her injuries would have been avoided had a seat belt been used. Defendant cites Duma v. Keena, 2004 ND 104, 680 N.W.2d 627 ("Duma"), and Halvorson v. Voeller, 336 N.W.2d 118 (N.D. 1983) ("Halvorson"), as authority for such an instruction. Finally, defendant argues that no expert is required because failure to exercise care to avoid or mitigate damages is an item of fault and that the jury is always entitled to determine fault without an expert.

Under North Dakota's comparative fault law, fault includes: "negligence or assumption of risk" and "failure to exercise reasonable care to avoid an injury or to mitigate damages." N.D.C.C. § 32-03.2-01. Clearly, the failure to wear a seatbelt is an item of "fault" under these definitions. Further, § 32-03.2-02 makes it clear that this fault must be compared with all of the fault giving rise to the injury, including, in this case, the fault of the other driver. Duma, 2004 ND 104, ¶¶ 19-23 (Kapsner and Neumann, JJ., concurring); see also N.D.J.I. C-2.84 ("The law makes no distinction between accident-causing fault and injury-causing fault. If you find fault, you must allocate the fault on a percentage basis between all persons legally responsible for such fault, whether they are or ever were parties to this lawsuit."). Consequently, by admitting liability and agreeing that the trial would be limited to damages and whether no-fault benefits must be paid, defendant has waived its "seatbelt defense."

3

Further, the North Dakota Supreme Court's decisions in Duma and Halvorson are not inapposite. In Duma, the jury was instructed:

### USE OF SEATBELT
Evidence was presented from which you could find that the plaintiff was not using an available seatbelt and shoulder harness at the time of the accident. If you find (1) that it was unreasonable for the plaintiff not to use the seatbelt and shoulder harness and (2) that the plaintiff would not have received some or all of her injuries had she worn a seat belt and shoulder harness, then (3) the amount of damages awarded the plaintiff for the injuries she sustained, if any, must be reduced in proportion to the amount of injury she would have avoided by the use of a seatbelt and shoulder harness.
   The burden of proof on both (1) and (2) rests with the defendant.

Duma, 2004 ND 104, ¶ 8. In addition, the jury was asked the following question:

QUESTION 9: What, if any, percentage of her injuries would have Sandra Duma avoided if she had used a seat belt and shoulder harness?

Id. at ¶ 3. And, the jury's response, unfortunately for Duma, was: "100%." Id. Based on the answer to Question 9, the trial court entered judgment that Duma take nothing even though the jury had responded to an earlier question that Duma was not at fault for the accident. Id. at ¶ 4.

On appeal, the North Dakota Supreme Court affirmed the trial court's "take nothing" judgment on the basis that the instructions given by the trial court became the law of the case when plaintiff failed to object to them. Id. at ¶ 10. Further, the Duma majority made it clear that the court had not concluded that the trial court's instructions correctly applied the present statutes governing comparative fault. The court stated:

   [¶ 15] During oral argument, Duma alluded to the issue of whether separating the questions of negligence and mitigation is inappropriate under our comparative fault law. This issue was not raised before the trial court, and we will not address an argument raised for the first time on appeal. [citation omitted].

Id. at ¶ 15.

Finally, the two concurring Justices in Duma went further. While they concurred in the result based on plaintiff's consent to the jury instructions, they made clear in their opinion that the instructions allowing the jury to separately reduce the damages in proportion to the amount of injury that could have been avoided by the use of a seatbelt were not in compliance with North Dakota's current comparative fault statutes. In relevant part, the concurring justices stated:

> [¶ 19] I am concerned the majority opinion leaves the impression that the methods used in Halvorson v. Voeller, 336 N.W.2d 118 (N.D.1983), based upon the law as it existed in 1983, is the correct method of assessing fault and the right to recover for injury after the adoption of N.D.C.C. §§ 32-03.2-01 to 32-03.2-02 in 1987. The result in this case points out the importance of correct jury instructions and the requirement that the trial court apply the law applicable at the time of Duma's injury. Although it was not done here, Duma failed to demonstrate she preserved the right to a new trial by making the proper objections.
> \* \* \* \*
> [¶ 23] Under modified comparative fault, all fault which contributes *to the injury* must be weighed by the jury. N.D.C.C. § 32-03.2-02 (emphasis added). Fault specifically includes "failure to exercise reasonable care to avoid an injury or to mitigate damages." N.D.C.C. § 32-03.2-01; NDJI C-2.80. Under modified comparative fault, the jury does not first determine who was at fault for the accident and, later and separately, determine if the injury could have been avoided by the injured person. All of the contributing factors to the injury are weighed together for purposes of allocating percentages of fault. "The law makes no distinction between accident-causing fault and injury-causing fault. If you find fault, you must allocate the fault on a percentage basis between all persons legally responsible for such fault, whether they are or ever were parties to this lawsuit." NDJI C-2.84.

Id. at ¶¶ 19, 23 (Kapsner and Neumann, JJ., concurring).

In short, the majority opinion in Duma is not supportive of defendant's arguments here. Further, the court concludes that the opinion of Duma's concurring justices is persuasive on the point as to how the seatbelt defense would have to be handled in this case if liability had not been admitted.

Finally, the North Dakota Supreme Court's 1983 decision in Halvorson is for the same reasons of no help to defendant here because that case, which involved the failure to wear a

motorcycle helmet, was decided under the law that existed prior to North Dakota adopting its current comparative fault statutes.

Based on the foregoing, the court **ORDERS** that no reference shall be made or evidence presented during the trial regarding Larissa Tessier not wearing a seatbelt.

   2.   **Motion to exclude "[a]ny reference to or evidence concerning the driver of the other vehicle Amy Svihovec, having died as a result of the November 24, 2009, accident."**

The court agrees that the fact that Amy Svihovec perished in the accident is irrelevant in this case. While the court doubts that advising the jury of the other driver's death would affect the outcome of this case, there is no good reason for why it should be mentioned in the first instance. Consequently, the court **ORDERS** that no reference be made or evidence introduced regarding the fact that the driver of the other vehicle in the accident died.

   3.   **Motion to exclude "[a]ny reference to or evidence concerning Larissa Tessier receiving income from her father's trucking company both before and after the accident."**

The court will leave this issue open for now and **ORDERS** that no reference be made or evidence introduced on this subject until the matter is first raised with the court out of the presence of the jury. However, if the income is wage income, the court is likely to allow the evidence and let plaintiffs explain why it should not be considered.

   4.   **Motion to exclude "[a]ny reference to or evidence concerning the income tax returns of Zach and Larissa Tessier except for Schedule C Forms - Profit or Loss from Business - concerning Larissa Tessier's cosmetology business."**

The court does not believe it has sufficient information to rule on this motion and wants to see the actual returns and consider the purposes for which the evidence is offered. The court

**ORDERS** that no reference be made or evidence introduced on this subject until the matter is first raised with the court out of the presence of the jury.

    **5.**    **Motion to exclude "[a]ny reference to or evidence concerning Larissa Tessier having failed to mitigate her damages."**

The court agrees with plaintiffs' arguments on this point as to any conduct that occurred on the day of the accident for the reasons set forth with respect to the first motion in limine. Consequently, the court **ORDERS** that no reference be made or evidence presented with respect to a failure to mitigate damages based on plaintiff's conduct on the day of the accident. The court **FURTHER ORDERS** that no reference be made or evidence be presented with respect to any claimed failure to mitigate damages following the day of the accident without first having raised the issue with the court out of the presence of the jury.

Dated this 27th day of March, 2013.

                                              */s/ Charles S. Miller, Jr.*
                                              Charles S. Miller, Jr.
                                              United States Magistrate Judge